UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

```
_____
                              )
IN RE:                        )
                              )
JOHAN K. NILSEN,              )
                              )
        Plaintiff/Appellant,  )
                              )
        v.                    )        CIVIL ACTION
                              )        NO. 16-10148-WGY
MASSACHUSETTS DEPARTMENT OF   )
REVENUE and the UNITED STATES,)
                              )
                              )
        Defendants/Appellees. )
_____)
```

YOUNG, U.S. District Judge                    September 6, 2016

**MEMORANDUM & ORDER**

## I.    INTRODUCTION

Before this Court is a bankruptcy appeal stemming from a bankruptcy petition filed by the Plaintiff, Johan K. Nilsen ("Nilsen"), pursuant to Chapter 7 of the Bankruptcy Code. Following the partial grant of Nilsen's petition, Nilsen initiated adversary proceedings against the Massachusetts Department of Revenue (the "Department") and the United States of America in the United States Bankruptcy Court for the District of Massachusetts, seeking discharge of his income-tax debts for 2000 through 2005, 2007, 2009, and 2010 (the "periods

at issue").[1]  The Bankruptcy Court entered an order of summary

judgment in favor of the Department and the United States.

Nilsen now appeals that decision, arguing that his late-filed

IRS Form 1040s and Massachusetts Form 1s for the periods at

issue constitute "equivalent reports" and thus are not excepted

from discharge under 11 U.S.C. § 523(a)(1)(B).

### A.    Procedural Posture

On March 20, 2015, Nilsen filed a voluntary petition under

Chapter 7 of the Bankruptcy Code.  Bankr. R. 17-50, ECF No. 4.

After the Bankruptcy Court granted his petition and partially

discharged Nilsen's debts, he brought an adversary proceeding

against the Department and the United States seeking discharge

of the remainder of his debts, specifically taxes due for the

periods at issue.  Id. at 10-12, 51-54.  The Department and the

United States filed motions for judgment on the pleadings on

August 3, 2015, and September 15, 2015, respectively.  Id. at

63-66, 95-97.  During the motion hearing the Bankruptcy Court

---

[1] Nilsen named the Internal Revenue Service (the "IRS") as a party in this case, but as the IRS is generally immune from suit, Lawson v. United States Internal Revenue Servs., C.A. No. 15-499ML, 2016 WL 4179790, at *3 (D.R.I. July 8, 2016) (citing United States v. Williams, 514 U.S. 527, 531 (1995)), the Court references the proper appellee, the United States, which has filed all pleadings on behalf of the IRS.  See United States v. Oxylance Corp., 115 B.R. 380 (N.D. Ga. 1990) ("the IRS cannot sue and be sued and . . . the proper party in actions involving federal taxes is the United States of America") (citing Blackmar v. Guerre, 342 U.S. 512, 514 (1952)).

required Nilsen to submit additional documentation of filings
made to the Department and to the Internal Revenue Service (the
"IRS").   In re Nilsen, 542 B.R. 640, 643 (Bankr. D. Mass. 2015).
The court then treated the pending motions as motions for
summary judgment pursuant to Federal Rule of Civil Procedure
12(d).   Id. at 643.

On December 14, 2015, the United States Bankruptcy Court
for the District of Massachusetts granted summary judgment in
favor of the United States and the Department.[2]   Id. at 649.   Two
weeks later, Nilsen filed a notice of appeal and later elected
to transfer his appeal to the United States District Court for
the District of Massachusetts.   See Order Transfer Appeal Dist.
Ct., ECF No. 1.   On February 1, 2016, the case was assigned to
this session of the Court.   Nilsen filed his brief on June 10,
2016, Br. Appellant, Johan Nilsen ("Appellant's Br.), ECF No.
10, and later that month, the Department and the United States
independently filed briefs, Br. Def./Appellee Massachusetts
Dep't Revenue ("Dep't's Br."), ECF No. 11; Br. Appellee United
States of America ("United States' Br."), ECF No. 12.

---

[2] While Nilsen raised three counts in his complaint, the
Bankruptcy Court addressed solely count II.   In re Nilsen, 542
B.R. at 643-44 (explaining that "[i]n the Motions and the
Objections, the parties focused exclusively on [c]ount II of the
Complaint based on § 523(a)(1)(B)[,]" thus "[t]he Court will
address only [c]ount II of the Complaint."). Similarly, the
appellate briefs address only count II of the complaint, and as
such, the Court will address count II exclusively.

**B.   Factual Background**

The material facts of this case are undisputed.   See In re Nilsen, 542 B.R. at 642; Appellant's Br. 2; Dep't's Br. 2. Nilsen owes the Department and the IRS income taxes, penalties, and interest for the periods at issue.   Bankr. R. 11.   The filing timeline is as follows: for the years 2000 through 2005, 2007, and 2009, Nilsen filed his IRS Form 1040s and Massachusetts Form 1s on August 23, 2010.   Bankr. R. 163 (Affidavit of Nilsen).   On March 12, 2012, Nilsen filed his federal and state forms for 2010.   Id.   Both the federal and state annual income tax filing deadline for a previous tax year is on or before April 15 of the following year.   26 U.S.C. § 6072(a); Mass. Gen. Laws ch. 62C, § 69(c).

On March 20, 2015, Nilsen filed a voluntary Chapter 7 bankruptcy petition.   Bankr. R. 18.   Under Schedule F of the petition, Nilsen owes $28,434 and $217,529 to the Department and the IRS, respectively.   Id. at 29.   While some of Nilsen's debts were discharged once his petition was granted, his tax debt remained.   See id. at 51-52.   After this determination, Nilsen initiated an adversary proceeding, id. at 11, seeking the inclusion of those tax debts initially excepted from discharge, id. at 40.   The Bankruptcy Court concluded that Nilsen's tax debt was not dischargeable, and Nilsen subsequently appealed that decision to this Court.   Id. at 153.

## II.   ANALYSIS

This Court has jurisdiction over bankruptcy proceedings "arising under title 11, or arising in or related to cases under title 11[,]" 28 U.S.C. § 1334(b), and over appeals of a Bankruptcy Court's final judgment, id. § 158(a).  Nilsen properly elected to proceed in district court pursuant to 28 U.S.C. § 158(c)(1)(B).  See Order Transfer Appeal Dist. Ct.

### A.   Standard of Review

"On appeal from a judgment in an adversary proceeding, a district court reviews conclusions of law de novo, but ought accept the bankruptcy judge's finding of fact unless they were clearly erroneous."  Perkins v. Massachusetts Dep't of Revenue, 507 B.R. 45, 48 (D. Mass. 2014), aff'd sub nom. In re Fahey, 779 F.3d 1, 10 (1st Cir. 2015) (internal quotation marks and citation omitted).  Additionally, the district court may "'affirm the bankruptcy court order on any ground apparent from the record on appeal.'"  Id. (internal quotation marks and citation omitted).  As the issue on appeal is purely legal, see Appellant's Br. 2; Dep't. Br. 5, this Court's review is de novo.

### B.   Legal Framework

The aim of a bankruptcy proceeding is to provide debtors with a "fresh start."  Grogan v. Garner, 498 U.S. 279, 286 (1991).  In accordance with this aim, when a debtor files a petition under section 727 of the Bankruptcy Code, "the court

shall grant the debtor a discharge," 11 U.S.C. § 727, subject to certain exceptions set forth in section 523.  That section provides, in relevant part:

> (a) A discharge under section 727, 1141, 1228(a), 1228(b), or 1328(b) of this title does not discharge an individual debtor from any debt--
>
>> (1) for a tax or a customs duty--
>>
>>> (A) of the kind and for the periods specified in section 507(a)(3) or 507(a)(8) of this title, whether or not a claim for such tax was filed or allowed;
>>>
>>> (B) with respect to which a return, or equivalent report or notice, if required--
>>>
>>>> (i) was not filed or given; or
>>>>
>>>> (ii) was filed or given after the date on which such return, report, or notice was last due, under applicable law or under any extension, and after two years before the date of the filing of the petition; or
>>>
>>> (C) with respect to which the debtor made a fraudulent return or willfully attempted in any manner to evade or defeat such tax[.]

11 U.S.C. § 523.  As section 523 makes clear, where a person fails to file a required "return, or equivalent report[,]" his tax debt will not be discharged even if his petition for bankruptcy is granted.

Congress shed further light on the operation of this statutory provision in 2005, with the adoption of the Bankruptcy Abuse Prevention and Consumer Protection Act (the "Bankruptcy Abuse Act" or the "Act").  Pub. L. No. 109-8, 119 Stat. 23 (Apr.

20, 2005).  Among other amendments to the Bankruptcy Code

implemented by the Bankruptcy Abuse Act, the Act added an

unnumbered "hanging paragraph" commonly denoted as section

523(a)(*).[3]  See In re Fahey, 779 F.3d at 4.  The "hanging

paragraph" provides:

> For purposes of this subsection, the term "return"
> means a return that satisfies the requirements of
> applicable nonbankruptcy law (including applicable
> filing requirements).  Such term includes a return
> prepared pursuant to section 6020(a) of the Internal
> Revenue Code of 1986, or similar State or local law,
> or a written stipulation to a judgment or a final
> order entered by a nonbankruptcy tribunal, but does
> not include a return made pursuant to section 6020(b)
> of the Internal Revenue Code of 1986, or a similar
> State or local law.

11 U.S.C. § 523(a)(i).

### C.   Application to Nilsen's Late-Filed Returns

Nilsen filed his tax returns for the periods at issue after

the deadlines imposed by the applicable nonbankruptcy laws.[4]

---

[3] Congress hoped that the "hanging paragraph" would provide
a clear definition of "return" under the Bankruptcy Code.  In re
McCoy, 666 F.3d 924, 927-28 (5th Cir. 2012) (outlining the four
motivating factors of the Bankruptcy Abuse Act).  In actuality,
the "hanging paragraph" has been the crux of many bankruptcy
appeals, raising more questions about the definition of "return"
and thus leaving circuit courts to clarify the murky waters of
the Bankruptcy Code.  See, e.g., In re Fahey, 779 F.3d at 4; In
re Mallo, 774 F.3d 1313, 1318-22 (10th Cir. 2014), cert. denied,
135 S. Ct. 2889 (2015); In re McCoy, 666 F.3d at 928-32.

[4] Here, the "applicable nonbankruptcy law" that controls
filing requirements of a Massachusetts Form 1 is chapter 62C,
section 6(c) of the Massachusetts General Laws, which states
that "[e]xcept as otherwise provided, returns under this section
shall be made on or before the fifteenth day of the fourth month

Although he filed them prior to two years before he filed his bankruptcy petition, under the hanging paragraph Nilsen's failure to meet the filing deadlines means that the late-filed returns are not "returns," for the purpose of the dischargeability of the corresponding tax debt.  Thus, it is as though he filed no returns at all for the periods at issue, which would appear to render his tax debt non-dischargeable under section 523(a)(1)(B)(i).

Nilsen acknowledges that his late-filed forms "do not constitute 'returns' as defined in section 523(a)(*) of the Bankruptcy Code," Appellant's Br. 1-2, but argues that his tax debt for the periods at issue is nonetheless subject to discharge because his late-filed returns constitute "equivalent reports" under section 523(a)(1)(B).  Id. at 2, 4, 5, 9.  He bases this argument on the rather odd premise that the appropriate test for determining whether a document constitutes an "equivalent report" is the test previously -- i.e., before

following the close of each taxable year."  Mass. Gen. Laws ch. 62C, § 69(c); Perkins, 507 B.R. at 49.  Similarly, the Internal Revenue Code, governing the filing requirements of a IRS Form 1040, stipulates that "returns made on the basis of a fiscal year shall be filed on or before the 15th day of the fourth month following the close of the fiscal year, except as otherwise provided[.]"  26 U.S.C. § 6072(a).  Ultimately, for a Massachusetts Form 1 or an IRS Form 1040 to meet the filing requirements of nonbankruptcy law and to fit neatly in the Bankruptcy Code's definitional limits of "return," as amended by the Bankruptcy Abuse Act, they must be filed on or before April 15 of the following year.

the Bankruptcy Abuse Act -- employed by courts to determine

whether a particular form constituted a "return," namely the

four-pronged Beard test.  Id. at 5 (citing Beard v. Commn'r of

Internal Revenue, 82 T.C. 766, 777 (1984), aff'd, 793 F.2d 139

(6th Cir. 1986)).  Nilsen further contends that his late-filed

forms meet each of the requirements of this test, and

accordingly, that the tax debt associated with them is subject

to discharge.  The Appellees, meanwhile, argue that "equivalent

reports" do not encompass late-filed returns, and that the test

Nilsen cites in support of his position is wholly inapplicable.

See Dep't's Br. 7-15; United States' Br. 8-9, 11-13.

Nilsen's contention that this Court ought apply the Beard

test to determine whether his late-filed returns constituted

"equivalent reports" under the Bankruptcy Code is based

primarily on a footnote in the First Circuit's decision in In re

Fahey, in which the court stated that it was "not . . .

reject[ing] the possibility that pre-[Bankruptcy Abuse Act] case

law, such as Beard, might remain viable in deciding whether a

document not purporting to be a return is an 'equivalent report

or notice' under section 523(a)(1)(B).'"  779 F.3d at 10 n.12.

Thus, Nilsen argues, although the Beard test no longer governs

whether a document constitutes a "return," courts should

continue to use it to determine whether forms amount to

"equivalent reports" -- a term not defined in the amendments introduced by the Bankruptcy Abuse Act.  See Appellant's Br. 5.

Nilsen's reliance on this footnote is misplaced.  First, it is worth noting at the outset that the First Circuit never "formally adopted Beard," even as the test for determining whether a document constitutes a "return."  In re Fahey, 779 F.3d at 16 n.22 (noting that "prior to 2005, courts in [the First Circuit] applied or considered [the Beard test] to try to figure out what constituted a 'return' for purposes of 11 U.S.C. § 523(a)").  Second, the footnote's statement regarding the continued viability of Beard (along with other pre-Bankruptcy Abuse Act caselaw) pertains specifically to documents "not purporting to be . . . return[s]."[5]  Id. at 10 n.12.  Here, although their untimely filing meant that they were not "returns" for the purpose of section 523, Nilsen's late-filed forms do, in fact, "purport" to be returns.[6]  Indeed, Nilsen does

---

[5] This is, admittedly, somewhat confusing, as the first prong of the Beard test asks whether the form at issue "purport[s] to be a return[.]"  E.g., In re Hindenlang, 164 F.3d 1029, 1033 (6th Cir. 1999) (internal quotation marks and citations omitted).  Considering that a form only satisfies the Beard test if it does, in fact, purport to be a return, it is unclear what the First Circuit meant when it stated that Beard might continue to apply in cases involving forms not purporting to be returns.  In this case, however, no interpretation of the First Circuit's statement saves Nilsen's argument.

[6] IRS Form 1040 clearly states "U.S. Individual Income Tax Return" in bold typeface across the top.  Form 1040-IRS.gov, https://www.irs.gov/pub/irs-pdf/f1040.pdf, (2015).  In addition,

not claim that the forms are something other than late-filed returns.

More fundamentally, Nilsen cites no authority (besides the footnote described above) to support his claim that the Beard test ought apply here, and this Court is unable to identify any instance where courts applied the Beard test to determine whether a form that does not constitute a "return" for the purpose of section 523 alternatively qualifies as an "equivalent report" falling under section 523.[7]  By contrast, the Department cites numerous cases demonstrating that "equivalent report[s]" are something else besides a return.  See Dep't's Br. 9-10, 16-17.

---

in bold typeface across the top of a Massachusetts Form 1 is the phrase "Massachusetts Resident Income Tax Return."  Form 1: Massachusetts Resident Income Tax Return and Schedules (2013), http://www.mass.gov/dor/forms/personal-income/2013/form-1/.

[7] In re Ciotti, 638 F.3d 276 (4th Cir. 2011), arguably represents an exception, insofar as the court considers the Beard factors in determining whether a required report under the Maryland tax code was sufficiently similar to a "return" to constitute an "equivalent report," in which case Ciotti's failure to file it would render her corresponding tax debt non-dischargeable under section 523(a)(1)(B).  Id. at 280.  But In re Ciotti is distinguishable because it involved a distinct form (i.e., not a late-filed return).  Moreover, the court's reasoning there actually cuts against Nilsen's argument here, because it suggests that, under the relevant statutory provision -- as amended by the Bankruptcy Abuse Act -- the same filing requirements that apply to returns applies to other notices and reports.  See id. at 279-80 ("Congress determined that the same policy reasons that justify precluding the discharge of tax debt when the debtor failed to file a return also justify precluding the discharge of tax debt when the debtor failed to file or give a required report or notice corresponding to that debt.").

In amending section 523, "Congress intended to settle the dispute over late filed tax returns against the debtor[.]"  <u>In re Fahey</u>, 779 F.3d at 10.  Nilsen cannot escape this outcome by characterizing his late-filed returns as "equivalent reports." Accordingly, the Bankruptcy Court correctly determined that his tax debt for the periods at issue was not dischargeable, and the Court rejects Nilsen's argument on appeal.

**III. CONCLUSION**

For the foregoing reasons, the Court DENIES Nilsen's appeal, ECF No. 1, and AFFIRMS the Bankruptcy Court's judgment.


**SO ORDERED.**


/s/ William G. Young
WILLIAM G. YOUNG
DISTRICT JUDGE